## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

### AT THE

## MARCH TERM, 1915.

---

(*Continued from Volume 191*).

---

SAM JOHNSON, Respondent, v. ST. LOUIS & SAN
FRANCISCO RAILROAD COMPANY, Appel-
.lant.

**St. Louis Court of Appeals, July 2, 1915.**

1. **CARRIERS OF PASSENGERS: Injury to Passenger: Prema-
ture Start of Train: Sufficiency of Evidence.** In an action for
injuries sustained by a passenger on! a mixed train, evidence
that, after the train had stopped at a station to permit pas-
sengers to disembark, and while plaintiff was proceeding along
the. aisle of the coach, the train was suddenly moved backward,
throwing plaintiff down and injuring him, *held* sufficient to
warrant a finding that defendant was negligent in failing to
keep the train stationary a sufficient length of time to allow
plaintiff to safely alight therefrom.

2. **DAMAGES: Special Damages: Pleading: Evidence.** In an ac-
tion for personal injuries, where the petition did not allege, either
directly or indirectly, specifically or generally, that impotency
resulted from the injuries alleged to have been sustained by
plaintiff, and it was not shown that impotency would necessarily
.result from such injuries, it was error to admit evidence to the
effect that his injuries resulted in impotence.

3. ————: **Instructions: Condition in Life.** In an action for personal injuries, the court should not instruct the jury that, in assessing the damages, they may take plaintiff's age and condition in life into consideration; but whether such direction in this case was reversible error is not decided.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellant.

(1) The court erred in overruling the demurrer to the evidence interposed by defendant at the close of plaintiff's case, and in refusing defendant's request for a peremptory instruction at the close of all the evidence. Ervin v. Railroad, 94 Mo. App. 289; Portuchek v. Railroad, 101 Mo. App. 52; Shields v. Railroad, 87 Mo. App. 646; Wait v. Railroad, 165 Mo. 612; Hedrick v. Railroad, 195 Mo. 104; Guffey v. Railroad, 53 Mo. App. 462; Saxton v. Railroad, 98 Mo. App. 503; Pryor v. Railroad, 85 Mo. App. 367; Bartley v. Railroad, 148 Mo. 124; Hite v. Railroad, 130 Mo. 132. (2) The court erred in giving instruction number 1 on the part of plaintiff. This instruction is not supported by the evidence. Authorities under point 1; Hamilton v. Railroad, 114 Mo. App. 508. (3) Instruction number 2 given for plaintiff on the measure of damages is erroneous. Wachter v. Railroad, 113 Mo. App. 281; Diel v. City of Ferguson, 158 Mo. App. 286. (4) The court erred in admitting testimony as to plaintiff's loss of sexual powers, because such testimony was not within the purview of the pleadings. Black v. Railroad, 217 Mo. 687; Moore v. Trans. Co., 226 Mo. 689; Price v. Railroad, 220 Mo. 464. (5) The verdict is grossly excessive, and is the result of passion and prejudice on the part of the jury. Black v. Railroad, 217

Mo. 687; Taylor v. Railroad, 185 Mo. 257; Neff v. City of Cameron, 213 Mo. 366; Gay v. Railroad, (Wis.), 120 N. W. 283.

*Bradley & McKay* for respondent.

(1) The court committed no error in overruling the demurrer to the evidence interposed by appellant at the close of respondent's case, and in refusing appellant's request for a peremptory instruction at the close of all the evidence. (a) The pleadings and facts, as disclosed by the record in this case, does not bring it within the rule announced in the cases cited by appellant under point number one. The doctrine of *res ipsa loquitur* applies to this case. Eroin v. Railroad, 94 Mo. App. 289; Hedrick v. Railroad, 195 Mo. 104; Wait v. Railroad, 165 Mo. 612. (b) Where a railroad company carries passengers for hire on its mixed trains it must exercise the same degree of care for their safety as is required in the operation of its regular passenger trains. Hedrick v. Railroad, 195 Mo. 104; Wait v. Railroad, 165 Mo. 612; Whitehead v. Railroad, 99 Mo. 263; McGee v. Railroad, 92 Mo. 208; Erwin v. Railroad, 94 Mo. App. 289. (c) If there is any evidence it must go to the jury who are the exclusive judges of its weight and sufficiency, however slight it may be and whether it be direct or inferential. Twohey v. Fruin, 96 Mo. 104; Charles v. Patch, 87 Mo. 450; Lee v. Knapp & Co., 137 Mo. 385; Taylor v. Short, 38 Mo. App. 21; George v. Railroad, 40 Mo. App. 433; Hadley v. Orchard, 77 Mo. App. 141; Powers v. Transit Co., 202 Mo. 280. (d) There is at least an implied contract on the part of a railway company to safely carry its passengers. Sweeney v. Cable Co., 150 Mo. 385; Dougherty v. Railroad, 81 Mo. 325. (e) The fact that respondent was injured while being carried as a passenger on defendant's mixed train and after the train had reached the station and the station had been announced by the

servants in charge thereof and respondent with other passengers were leaving said train makes it a prima-facia case, and the burden of proof is then cast upon defendant to relieve itself of the responsibility of showing that the injury was the result of an accident which ordinary care, forethought and diligence could not have prevented, which it did not attempt to do, but on the contrary the men in charge of said train did not affirm or deny that the train was negligently backed as stated in respondent's petition and the cause ought to have gone to the jury. Guffey v. Railroad, 53 Mo. App. 462; Lemon v. Chanslor, 68 Mo. 340; Coudy v. Railroad, 85 Mo. 79; Furnish v. Railroad, 102 Mo. 438. (f) A common carrier, though not an insurer of the safety of its passengers is held to the exercise of the highest degree of care in protecting them from injury. The right of action, however, that accrues to the passenger injured while being served by the carrier, is founded in negligence but from the character of the relation a presumption of negligence arises from the fact of injury that throws the burden upon the carrier to establish upon its part the exercise of the degree of care required, and according to the testimony offered by the servants in charge of the train, the train was negligently backed after it reached the station and was stopped, and the case ought to have gone to the jury. Hamilton v. Railroad, 114 Mo. App. 508. (2) The court did not err in admitting testimony as to respondent's loss of sexual powers, because such testimony was shown by the evidence to be the natural result of such injuries. Moore v. Transit Co., 226 Mo. 705.

ALLEN, J.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff at Kennett, Missouri, while a passenger upon a train operated by defendant. There was a verdict

and judgment below for plaintiff in the sum of $5000, and the case is here upon defendant's appeal.

On or about November 18, 1912, plaintiff was a passenger upon a mixed train, i. e., a train made up of a number of freight cars and carrying a passenger coach at the rear thereof, having taken passage thereupon at Senath, Missouri, for transportation to Kennett. The injuries for which he sues are alleged to have been inflicted upon him while he was attempting to pass along the aisle of the passenger coach, after the train had been brought to a stop at the station at Kennett, and after defendant's agents and servants had announced its arrival at said place.

The allegations of negligence contained in the petition are to the effect that the defendant stopped the train for the purpose of permitting passengers to alight at the station at Kennett, whereupon plaintiff, together with other passengers, "started to leave said train, and while exercising due care on his part in attempting to leave the train, the defendant company, by its agents, servants and employees, in charge of said train, and without any warning whatever, negligently and carelessly caused said train to suddenly move backward thus and thereby throwing plaintiff violently across a seat or seats in said train or coach and injuring him." The petition also avers that the defendant is a common carrier engaged in interstate commerce, by reason whereof it became its duty "to at all times have the air appliances on its train in good condition so that the train might be controlled by the operation of the engine;" and it is alleged that the defendant negligently permitted the air appliances to become defective, out of repair and not properly connected "on the rear of the train and immediately in front of the coach of said train," which defendant knew, or by the exercise of ordinary care could have known. And it is alleged that plaintiff's injuries and loss, specifically set out in the petition, were "directly caused and

occasioned by the carelessness and negligence of the defendant company, as aforesaid, in backing the forward part of its train up, as aforesaid, and permitting the air appliances and connection to become impaired.''

The evidence tends to sustain the charge of negligence to the effect that defendant's agents and servants in charge of its train failed to hold the same stationary for a reasonably sufficient time to allow plaintiff and other passengers to alight, but on the contrary negligently caused the cars to be suddenly and violently moved backward while plaintiff and others were attempting to leave the passenger coach. The testimony of plaintiff and other passengers is that the station was announced, and that the train came to a full stop, with the passenger coach beside the station platform, and remained stationary for a time, and that these witnesses and other passengers had left their seats and were proceeding along the aisle of the passenger coach when the train was suddenly and violently moved backward whereby many occupants of the car were thrown from their feet. The testimony, aside from mere conclusions of the witnesses, goes to show that the lurch or jar was extraordinarily violent and sudden, and entirely without warning. The testimony varies as to the length of time during which the car remained stationary before the sudden backward movement thereof, but some of the witnesses say that the car stood still for the period of about one minute before the ''crash'' came. It is unnecessary to review the evidence in detail touching the matter, for it is altogether clear that it is ample to sustain the negligence charged in this respect, to-wit, in suddenly backing the train after it had come to a standstill and had remained stationary for a time, and while plaintiff was attempting to leave the passenger coach.

The evidence in the record is not such as to cast liability on defendant for failure to equip its cars with air appliances. There is no evidence to show any vio-

lation of the Interstate Commerce Law in this respect, and the trial court properly so ruled. Touching this matter plaintiff adduced no evidence. Defendant's evidence shows that upon one occasion, at about this time, this same train was run into Kennett with the air appliances unconnected on the passenger coach and the freight car immediately in front of it. But if this was upon the day here in questions there is no evidence that it played any part in producing the injuries for which plaintiff sues.

I. The ruling of the trial court on the demurrer to the evidence is complained of, but it quite clearly appears that the evidence was sufficient to take plaintiff's case to the jury upon the theory that the defendant, as a common carrier, breached its duty to plaintiff in failing to hold its passenger coach stationary at the station at Kennett for a reasonably sufficient time to allow plaintiff and other passengers safely to alight therefrom. Appellant devotes much argument to the proposition that the evidence did not disclose such an unusual lurch, jar or jolt of this train, at the time in question, as to justify a recovery by plaintiff. The argument is that since this was a freight train which carried one passenger coach, plaintiff assumed the risk of perils arising from such jolts, jars or lurches as are ordinarily incident to the operation of such a train. This is quite true, as a bare statement of the law. [See Farmer v. Railway Co., 178 Mo. App. l. c. 586, 587, 161 S. W. 327, and authorities there collated.] However, the doctrine invoked is without influence here, for the reason that plaintiff's evidence is to the effect that the passenger coach at the rear of this train was drawn up at the station at Kennett and the train stopped for the purpose of permitting passengers to alight from such coach, defendant's servants having announced the arrival of the train at this station; and that while the car was so standing and the passengers

were upon their feet proceeding along the aisle of the car in order to depart therefrom, the train was caused to be suddenly and violently moved backward. It was in no sense a lurch, jar or jolt ordinarily incident to the operation of a freight train. The gravamen of the action is the failure of defendant to keep its passenger car stationary for a sufficient time to enable passengers to safely alight therefrom; and it owed this duty to the passengers in this car, under the facts as shown by plaintiff's evidence, regardless of the fact that it was a passenger car attached to the rear of a freight train. According to plaintiff's evidence this backward lurch was not one incident to the stopping of such a train, but was an independent and separate movement of the train, initiated after the cars had come to a full stop and had been standing motionless for some appreciable time.

It is true, as said above, that the evidence fails to sustain the negligence averred respecting the air appliances, but there is ample evidence to support the substantial charge of negligence upon which the case proceeds. As the judgment below must be reversed, and the cause remanded, for the reason to be presently noticed, plaintiff, if so advised, may amend his petition accordingly.

II. Plaintiff was permitted to prove that the injuries he received resulted in impotency. Defendant objected to the introduction of this evidence, on the ground that the petition failed to allege that impotency resulted from the injuries pleaded. The court overruled such objections, defendant excepting; and the admission of this evidence is assigned as error here. This assignment of error we think is well taken, in view of the latest ruling of the Supreme Court touching the matter in hand. The petition describes plaintiff's injuries and the results flowing therefrom as follows:

"That he was thrown violently across the arms of the seat from which he had arisen, his back striking the upright or corners of said seat about the coupling of the back, and a little to the left of the spine, thus and thereby bruising and permanently injuring his back and spinal column; that his head and neck were thrown violently back over and against the top of two seats which were turned together, thus and thereby greatly bruising plaintiff's head and neck and the muscles thereof, and permanently injuring his neck and head and the muscles thereof, and that in undertaking to catch himself and protect himself from the fall aforesaid, his left hand was thrown violently against a seat in said train bruising and spraining and dislocating the joints of his left thumb; that the blow or lick on the left of the spine and near the coupling of the plaintiff's back and the blow or lick on plaintiff's neck and head when his neck and head were thrown back over the tops of said seats, as aforesaid, caused plaintiff's left side to be partially paralyzed and has impaired permanently the sight of plaintiff's left eye, and has permanently injured plaintiff's nervous system; that the blow or lick near the spine or coupling of plaintiff's back, as aforesaid, caused plaintiff to partially lose the use of his right side; that the blow or fall as aforesaid near the coupling of plaintiff's back has permanently disordered plaintiff's kidneys and liver and other vital organs, and the bruise near the spine or at or near the coupling of plaintiff's back, together with the other injuries received has caused plaintiff to become affected and afflicted with lumbago, and vertigo and paralysis; and plaintiff states that his back and spine are permanently injured and that his left eye and vision is permanently injured, and that because of the paralysis produced as aforesaid, his left leg and arm are permanently injured, and he has partially lost the use of the same."

The petition does not allege, either directly or indirectly, specifically or generally, that impotency resulted from the injuries alleged to have been sustained by plaintiff, and it cannot be said that impotency would necessarily result from the injuries which the petition alleges that plaintiff received. Plaintiff's own physician testified that impotency was not a necessary result of such injuries, though it might follow therefrom. We have been cited by respondent to Moore v. Transit Co., 226 Mo. 689, in support of his contention that it was not error to admit this evidence because it was a natural result of the injuries alleged to have been received by plaintiff, though not a necessary result. But the Moore case and the earlier case of Gurley v. Railroad, 122 Mo. 141, 26 S. W. 953, have been expressly disapproved and overruled in the recent case of Hall v. Coal & Coke Co., 260 Mo. 351, where, (l. c. 371, et seq.) the following language is used touching the matter in hand, viz:

"It will be noticed that the petition fails to specifically allege impotency, neither does it contain an allegation of a general nature which might be said to embrace within its terms the condition of impotency. It is true that impotency might result from the injuries described, so might paralysis and many other diseases or conditions, but it cannot be said that impotency would *necessarily* result from the injuries detailed or described. If a condition or disease necessarily results or follows an injury there could be no valid reason for requiring the same to be specifically pleaded, because it would be presumed that the defendant would know, or at least be expected to discover before trial, those results or conditions which are necessarily produced by the injury alleged. Under such circumstances defendant would have ample opportunity to inquire into and to investigate the conditions so resulting and thereby be enabled to come to the trial of the cause fully prepared to present to the triers of the facts such

defense as the results of his investigation might warrant. But where the condition or result is not a necessary result, how can the defendant be apprised of such issue unless the plaintiff (who certainly has full information on the subject) be required to state such result or condition in his petition?''

"The rule above announced seems to be in conflict with what is said on that subject in the case of Gurley v. Railroad, 122 Mo. 141, and the majority opinion in the case of Moore v. Transit Company, 226 Mo. 689. . . . . After a carful review of the authorities, we have come to the conclusion that those cases, in so far as they conflict with the conclusion herein reached, should be no longer followed.

"Upon a careful consideration of the subject and review of the authorities we have come to the conclusion that the correct rule, the rule which has for its support the sounder logic and which while it works no unjust hardship upon the pleader yet undoubtedly bespeaks justice and greater fairness for the trial conflict, is stated by GRAVES, J., in his dissenting opinion in the case of Moore v. Transit Co., supra, l. c. 710, as follows:

" 'It is a well-known fact that from certain kinds of physical injuries, certain results will thereafter inevitably follow. In other words, that such injuries will naturally produce certain conditions and diseases. In such case an allegation in the petition of the injury inflicted would justify proof of such conditions and diseases as would of necessity follow the injury and as to such conditions and diseases the defendant must come prepared to defend. But, on the other hand, there are other physical injuries which may or may not produce resulting conditions or diseases. For instance, an injury to the lung might superinduce pneumonia, but not necessarily so. An injury to the nervous system might produce blindness, but not necessarily so. These

conditions or diseases last mentioned may as readily come from other causes as from the physical injury or injuries. In such case the petition should be specific, to the end that the defendant could come prepared to meet the issues and show that the condition or disease was not caused by the physical injury. This he cannot do if the unpleaded conditions or diseases are sprung upon him for the first time at the trial.' "

It is needless to say that our own rulings on this question heretofore made following the decision in the Moore case, supra, are now out of line with the latest controlling decision of the Supreme Court, and are no longer to be followed.

III.   Plaintiff's instruction number 2 authorized the jury, in assessing plaintiff's damages, to take into consideration his age *and condition in life*. It is urged that the use of the words italicized constituted prejudicial error. In support of the instruction respondent says that the language complained of was copied from an instruction employed in Gorham v. Railroad, 113 Mo. 408, l. c. 410, 20 S. W. 1060, and which had the approval of the Supreme Court. But the instruction in the Gorham case was not attacked because of the use of these words. It was assailed upon other grounds, and the court held that it was good as against the attacks levelled against it. The words complained of in the instruction before us have no proper place therein. But as the case must be reversed on other grounds we need not decide whether the use of these words was fatal error.

The judgment is reversed and the cause remanded. *Reynolds, P. J.,* and *Nortoni, J., concur.*